# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**ROTILIO FRANK MARTINEZ,**

    **Plaintiff,**

v.                          No. SA-18-CV-0220-JKP

**DISA, INC.; DISA GLOBAL SOLUTIONS, INC.; CALALLEN MEDICAL CLINIC,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is DISA, Inc. and DISA Global Solutions, Inc.'s ("DISA" or "Defendants") Motion for Summary Judgment on Plaintiff Rotilio Frank Martinez's causes of action of negligence, defamation, due process clause violations, and intentional interference with Employment.[1] (ECF No. 40). Martinez filed a response (ECF No. 43). After due consideration, the Court concludes the Motion shall be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts reveal Elite Turnaround Services ("ETS") extended an offer of employment to Martinez as a Quality Control Inspector, and he was scheduled to begin work on September 28, 2016. (ECF No. 1-1). As standard pre-employment screening process, ETS required Martinez to submit urine and hair samples for testing of drug-use, which he did on September 13, 2016, at Calallen Drug Testing. *Id*. The result of Martinez's urine sample was negative for drug use, and it is not at issue in this case. *Id*. Martinez's hair sample was analyzed by Psychemedics

---

[1] There is no cause of action in Texas for Intentional Interference with Employment. The Court construes Martinez's complaint to allege the tort of Tortious Interference with Prospective Relations. The Court examined the elements of tortious interference with prospective relations in determining DISA's entitlement to summary judgment.

Corporation. (ECF No. 40). Martinez's hair specimen was positive for presence of amphetamine and methamphetamine. *Id*. Martinez's specimen was forwarded to University Services for evaluation by Dr. Harvey R. Forman, the Medical Review Officer. *Id*. On September 19, 2016, Dr. Forman interviewed Martinez. (ECF No. 40-3). Martinez informed Dr. Forman he used methamphetamine "more than 90 days ago" and then stated "6 months plus." *Id*. Dr. Forman certified the test as positive. (ECF No. 40-2, ¶ 9).

On September 21, 2016, Martinez conducted an independent alternative testing of his hair specimen at Fastest Labs, which was analyzed by Quest Diagnostics. (ECF No. 43-7). The results of this test were negative. *Id*. Martinez contends this independent test demonstrates the result of the September 13, 2016 hair follicle test is a false positive. ECF No. 3.

DISA is an independent contractor/third-party administrator of drug and alcohol screening programs for a large group of clients known as the DISA Contractor's Consortium. (ECF No. 40, Exhibit 6 – Attachment B, Addendum B to Master Services Agreement). DISA maintains an online database (known as "DISA Works") of drug screening information of its clients' employees and applicants for employment. (*Id*. at Attachment B, Addendum B and C to Master Services Agreement). Consortium employers have access to DISA Works to determine whether an applicant or employee is in compliance with the applicable substance abuse policy. (*Id*. at Attachment B, Addendum B). DISA did not collect, test or analyze Martinez's urine or hair sample. (ECF 40 - Exhibit 6 – Affidavit of Valerie Readeaux). DISA does not own or operate Calallen and does not employ, train or have control over any Calallen employees. *Id*. Calallen collects urine and hair samples from Consortium applicants and employees pursuant to its contract with DISA. *Id*. DISA does not own or operate Psychemedics Corporation, and does not employ, train or have control over any Calallen employees.

Pursuant to its contract with DISA, Psychemedics analyzes hair specimens of Consortium applicants and employees. *Id*. Paragraph 8(j) of Addendum A of the Master Services Agreement states "the parties understand that this Agreement is for the sole benefit of DISA and Company, and no third party shall be deemed a "third-part beneficiary" of this Agreement." (ECF No. 40-Defendants' Exhibit 6 – Attachment B, Addendum A to Master Services Agreement).

On June 29, 2015, Martinez completed a Universal Membership Application Form. (ECF No. 40 - Defendants' Exhibit 6). The bottom portion of the application form contains a release which states the following,

> I have received and/or reviewed a copy of the DISA Contractors Consortium Substance Abuse Policy and/or North American Substance Abuse Program Policy and/or Hair Testing Substance Abuse Policy Program. I apply for membership in the DISA Contractors Consortium (DCC) and/or North American Substance Abuse Program (NASAP) and/or the Hair Testing Substance Abuse Program ***under the sponsorship of the Company Member indicated above***. I agree, upon acceptance, to abide by all DCC and/or NASAP and/or the Hair Testing Substance Abuse Program policies, rules and regulations. ***I authorize the DCC to release my drug and/or alcohol test results to the Company Member for which I worked at the time I was tested and/or the Company Member which required me to take a post-offer of employment drug and/or alcohol tests. I authorize the DCC to release information about my status in the DCC to those companies on whose premises I seek work or am currently working. I also authorize the DCC to release DCC status, test results, and other program activity to the Houston Area Contractors Safety Council through NASAP with the understanding that this data may affect my status in the NASAP and that this status may be shared with those Companies participating in the NASAP.*** This release expires five years after the latest date on which I was no longer an "active" member of the Consortium. I understand I have a right to receive a copy of this authorization.

*Id*.

Elite Turnaround Specialists (ETS) is the "Company" referred to in the release. (ECF No 40 - Defendants' Exhibit 6). The application form is used to enroll employees in the national DISA Contractors Consortium, the North American Substance Abuse Program, and/or the DISA Contractors Consortium Hair Testing policies. *Id*. The DISA Contractors Consortium Hair Testing Substance Abuse Policy is a standardized policy that was approved by the participating facility

owners. (ECF No. 40 - Defendants' Exhibit 6, Attachment E).

Martinez originally filed this matter in Bexar County, County Court at Law No. 3, and the action was removed to federal court. (ECF No. 1). Defendants filed this motion seeking summary judgment on all of Martinez's asserted causes of action of negligence, defamation and tortious interference with prospective relations causes of action. (ECF No. 40).

## STANDARD OF REVIEW

To be entitled to summary judgment, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "As to materiality, the substantive law will identify which facts are material," and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a dispute over a material fact qualifies as "genuine" within the meaning of Rule 56. *Id.* Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

---

[2]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

477 U.S. 317, 323 (1986). "When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *2 (N.D. Tex. July 8, 2019) (citing *Celotex Corp.*, 477 U.S. at 325); *see also Austin v. Kroger Texas, L.P.*, 864 F. 3d 33326, 335 (5th Cir. 2017)(Kroger satisfied its summary judgment burden by asserting Austin had no evidence of causation, which was a specific element of the negligence cause of action). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by alleging the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). If the movant carries that initial burden, the burden shifts to the party opposing the motion to present competent summary judgment evidence showing the existence of a genuine fact dispute. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c).

In determining whether to grant summary judgment, a court must view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). However, a court has "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

## DISCUSSION

### **Negligence**

Martinez alleges DISA "is liable for negligently failing to institute proper procedures and

5

practices to ensure samples were properly collected, handled and maintained." (ECF No. 1-1). Martinez also alleges DISA is vicariously liable for failing to ensure the proper collection procedures, collection, handling and analysis of Martinez's samples for drug testing purposes." *Id*. DISA asserts it is entitled to summary judgment on Martinez's negligence cause of action because it owed no legal duty to Martinez as a matter of law. (ECF No. 40).

To establish a prima facie case of negligence, a plaintiff must show the defendant owed him a legal duty. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). Because the existence of a legal duty is a threshold inquiry, Martinez must establish DISA owed him a legal duty to survive the motion for summary judgment. *See Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1994).

In a similar case, the Fifth Circuit, in *Willis v. Roche Biomedical Labs, Inc.* 61 F.3d 313, 316 (5th Cir. 1995), held a laboratory owes no duty to an employee whose urine is tested for drugs at the employer's request. The *Willis* Court concluded an independent drug-testing laboratory that is contracted by a third party to perform analysis of a drug test has no legal duty to the tested employee. *Id*. at 315-316. Similarly, in a case involving DISA under Texas law, the First Court of Appeals held a third-party administrator owes no legal duty to an employer's employee regarding the implementation of the employer's testing policy. *Sandoval v. DISA, Inc.*, No. 01-17-00846-CV, 2018 WL 6379665 *7-*8 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018). The *Sandoval* Court determined DISA, in contracting with Sandoval's employer to perform administrative duties, did not assume an extracontractual duty to Sandoval or other employees. *Id*.

Here, in an identical fact scenario, DISA contracted with ETS to perform certain administrative tasks in connection with ETS's pre-employment drug screening policy. DISA, in performing its contract-based administrative duties, did not assume any extracontractual legal

duties to Martinez. *See id*.

Because DISA owes no legal duty to Martinez as a matter of law, Martinez cannot establish a prima facie case of negligence. For this reason, DISA is entitled to summary judgment on Martinez's negligence cause of action.

**<u>Defamation</u>**

Martinez alleges DISA defamed him by reporting and maintaining his status as "inactive" in the DISA Works online system.

The publication of drug test results is protected by a qualified privilege. *Willis*, 61 F.3d at 316-17. The privilege protects the need for free communication of information to regarding business and personal interests. *Boze v. Branstetter*, 912 F.2d 801, 806 (5th Cir. 1990). Therefore, the publication of a false positive result is protected by a qualified privilege, which precludes a defamation claim unless actual malice is shown. *Willis*, 61 F.3d at 316-17.

To overcome the qualified privilege, a plaintiff must show the complained of communication was motivated by actual malice. *Duffy v. Leading Edge Products, Inc.*, 44 F. 3d 308, 312 (5th Cir. 1995). In the context of a defamation lawsuit, actual malice does not mean spite or ill-will. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex. 1989). Instead, the Martinez must present evidence which supports the conclusion the defendant had doubts as to the truth and accuracy of the communication. *Id*. "A negligent failure to investigate the truth or falsity of a statement before publication, or a failure to act as a reasonably prudent person is insufficient to support a finding of malice." *Frank v. Delta Airlines, Inc.*, No. CIV. A. 3:00-CV-2272, 2001 WL 910386 *2 (N.D. Texas Aug. 3, 2001)(*citing Duffy*, 44 F.3d at 313).

The gravamen of Martinez's defamation cause of action is DISA's listing of his status in

7

the DISA Works online database. This communication is protected by the qualified privilege. *See Willis*, 61 F.3d at 316-17. Martinez presents no evidence which would raise a genuine dispute of material fact whether this communication was motivated by actual malice.

Because Martinez cannot overcome DISA's qualified privilege, his defamation cause of action fails, and DISA is entitled to summary judgment.

**Tortious Interference with Prospective Relations**

Martinez also asserts a cause of action of tortious interference with prospective relations. DISA asserts it did not intentionally interfere with any prospective business relationship Martinez may have had and it did not commit another tort.

The elements of a tortious interference with prospective relations are: (1) there was a reasonable probability the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmatch Corp. v. Aspenwood Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

"Tortious interference with a prospective business relationship requires a finding that the defendant engaged in independently tortious or unlawful conduct." *El Paso Healthcare System, Ltd. v. Murphy*, 519 S.W.3d 412, 421 (Tex. 2017).

As discussed previously, the Court concludes Martinez cannot show DISA engaged in independent or unlawful conduct as a matter of law. Martinez neither alleged nor presented evidence of tortious or unlawful conduct committed by DISA. Therefore, DISA is entitled to summary judgment on Martinez's cause of action of tortious interference with prospective

relations.

**Due Process, ADA and TCHRA Causes of Action**

To the extent Martinez asserts causes of action of violation of due process and the Americans with Disabilities Act (ADA) or the equivalent Texas Commission on Human Rights Act (TCHRA), the Court concludes DISA is entitled to summary judgment.

The due process clauses of the Fifth and Fourteenth Amendments protect individuals from state actions, not from actions of private entities, such as DISA. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). Therefore, any cause of action Martinez asserts for violation of due process must fail as a matter of law, and DISA is entitled to summary judgment.

Martinez concedes in his Motion to Remand filed in this Court that he "does not make any ADA claims in his lawsuit." (ECF No. 7). To the extent these causes of action are still asserted in the live pleadings, they fail as a matter of law. The ADA, and its counterpart the TCHRA, only apply to employers, employment agencies, labor organizations, or joint labor management committees. *See* 42 U.S.C. § 12111(2); Tex. Lab. Code § 21.002(8)-(10), 21.051-53. Because it is undisputed that DISA was not Martinez's employer, DISA is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court GRANTS DISA's Motion for Summary Judgment on Martinez's negligence, defamation and due process causes of action, as well as any cause of action asserted under the ADA or TCHRA.

**It is so ORDERED this 22nd day of January, 2020.**

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE